CARLIE CHRISTENSEN, Acting United States Attorney (No. 633)
STEWART C. WALZ, Assistant United States Attorney (No. 3374)
KARIN FOJTIK, Assistant United States Attorney (No. 7527)
**Attorneys for the United States of America**
**185 South State Street, Suite 300**
**Salt Lake City, Utah 84111**
**Telephone:  (801) 524-5682**
**Email: stewart.walz@usdoj.gov**
**Email: karin.fojtik@usdoj.gov**

FILED
U.S. DISTRICT COURT

2012 FEB - 1  P 6: 35

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:11CR00876-DAK |
| Plaintiff, | : | **SUPERSEDING** |
| | : | **I N D I C T M E N T** |
| v. | : | |
| | : | **18 U.S.C. §§ 1343, 1349 (Wire Fraud);** |
| | : | **18 U.S.C. § 1014 (False Statement to a** |
| PORTIA R. LOUDER, | : | **Financial Institution); 18 U.S.C. §** |
| CHAD LOUDER, and | | **1957 (Money Laundering); 18 U.S.C. §** |
| DUSTIN WILCOX, | : | **371 (Conspiracy); 18 U.S.C. §§ 2(a)** |
| | | **and 2(b)(Aiding and Abetting;** |
| | : | **Willfully Causing Another to Commit** |
| | | **a Crime)** |
| Defendants. | : | |

The Grand Jury Charges:

BACKGROUND

At all times relevant to this Indictment:

1.     Defendant PORTIA R. LOUDER was an individual engaged in real estate

transactions.  She was the driving force behind the transactions detailed in this Indictment.

2.     Defendant CHAD LOUDER was/is the husband of the Defendant PORTIA R.

LOUDER.

3.      Defendant DUSTIN WILCOX was/is the brother of Defendant PORTIA R.
LOUDER.

4.      Various "straw buyers" and nominees participated in the real estate purchase and
loan transactions identified in this Indictment. Straw buyers and nominees were individuals who
fronted for the Defendants in the real estate transactions that are the subject of this Indictment,
often with the purpose of hiding Defendants' participation in and manipulation of the
transactions.

5.      Fair market value of a home is the price a willing seller will accept and a willing
buyer will pay when both are acting in his or her self interest.  The prices of the homes that
became the basis for loans issued were not based upon fair market value because the parties to
the transactions were acting at the behest of the Defendants in reaching the final sales price and
not in their respective best interests.

6.      As part of the mortgage application process, mortgage lenders required a truthful
and accurate loan application.

7.      At the loan closings, the closing agents were required to prepare a Settlement
Statement ("Form HUD 1") which accurately reflected the receipt and disbursement of
transaction funds.  The Form HUD 1 also showed, among other things, the down payment paid
by the borrower and funds due to the seller.

THE SCHEME AND ARTIFICE TO DEFRAUD

8.      Beginning in early 2006 to on or after May, 2008, in the Central Division of the
District of Utah, and elsewhere,

<strong>PORTIA R. LOUDER,<br>CHAD LOUDER</strong><br>and<br><strong>DUSTIN WILCOX,</strong>

2

Defendants herein, devised and intended to devise, a scheme and artifice to defraud and to obtain

money and property by means of false and fraudulent pretenses, representations, and promises

and omissions of material facts by obtaining real estate loans from one or more mortgage

lenders, as detailed below.  In executing and attempting to execute the scheme and artifice to

defraud, the Defendants:

      a.     knowingly transmitted and caused to be transmitted, by means of
wire communications in interstate commerce, writings, signs,
signals, pictures, and sounds, in violation of 18 U.S.C. § 1343
(Wire Fraud);

      b.     knowingly made false statements and caused false statements to be
made to financial institutions, in violation of 18 U.S.C. § 1014;

      c.     conducted and caused to be conducted financial transactions with
proceeds of the specified unlawful activities (i.e., wire fraud, and
false statements) in violation of 18 U.S.C. § 1957.

OBJECT OF THE SCHEME AND ARTIFICE TO DEFRAUD

9.     It was the object of the scheme and artifice to defraud for the Defendants to use

false statements, misrepresentations, and omissions and concealment of material facts to obtain

loans fraudulently from the mortgage lenders, and to profit thereby.

MANNER AND MEANS OF THE OF THE SCHEME AND ARTIFICE TO DEFRAUD

10.     It was a part of the scheme and artifice to defraud that the Defendants targeted

for purchase expensive homes for sale by owner, often those that had not been listed on the

Multiple Listing Service (MLS).  This way, the Defendants could, through the substitution of

nominees and straw parties, raise the purchase price of a home without the lender's learning of

the sales price set by the owner.

11.     It was further a part of the scheme and artifice to defraud that defendant PORTIA

R. LOUDER purchased and directed the purchase of the following properties:

      a.     997 West Pfeifferhorn Drive, Alpine Utah;

3

    b.    6021 Dry Creek, Highland, Utah;

    c.    1747 Sage Hollow Drive, Draper, Utah;

    d.    354 Deerfield Drive, Alpine, Utah;

    e.    891 Healey Homestead Circle, Alpine, Utah;

    f.    381 East Wayne Court, Alpine, Utah; and

    g.    1814 Somerset Ridge Drive, Draper, Utah.

12.    It was further a part of the scheme and artifice to defraud that the Defendants, after finding a home to purchase or have purchased, offered to purchase the home at or near the seller's asking price.

13.    It was further a part of the scheme and artifice to defraud that the Defendants typically told or had someone tell the seller that there was a new buyer for the property who would purchase the property for substantially more than the original sales price, but that the original seller would get only the price agreed upon between the seller and a Defendant or a nominee.

14.    It was further a part of the scheme and artifice to defraud that the Defendant PORTIA R. LOUDER often used a straw party or nominee to form a Joint Venture with the original seller of a property; the Joint Venture, acting at the direction of the Defendant PORTIA R. LOUDER, would receive payments from the loans obtained at an artificially inflated sales prices.

15.    It was further a part of the scheme and artifice to defraud that the Defendant PORTIA R. LOUDER commissioned appraisals on the properties, even though she was often not listed as either the purchaser or the seller. The Defendant often paid as much as $5,000 for an appraisal, even though an appraisal on an average home would often cost $500 or less, and an

4

appraisal on a high end home often cost about $1,500. The Defendant PORTIA R. LOUDER

paid approximately $380,000 to appraisers during 2006 through 2007.

      16.    It was further a part of the scheme and artifice to defraud that by concealing the

initial sales price, the Defendants were able artificially to increase the prices of homes disclosed

to lenders by drastic amounts. In this way:

      a.    the sellers of 997 West Pfeifferhorn Drive, Alpine Utah, received $1,340,000 in June 2006, and the transaction closed for $2,205,000;

      b.    the sellers of 6021 Dry Creek, Highland, Utah received $1,500,000 on September 1, 2006, and the transaction closed for $2,500,000;

      c.    the sellers of 1747 Sage Hollow Drive, Draper, Utah agreed to sell for $1,095,000 on or about September 11, 2006, and the transaction closed for $2,700,000 on April 6, 2007;

      d.    the sellers of 354 Deerfield Drive, Alpine, Utah agreed to sell for approximately $839,000 in January, 2007, and the transaction closed for $950,000 on March 27, 2007;

      e.    the sellers of 891 Healey Homestead Circle, Alpine, Utah agreed to sell for $900,000 on May 10, 2007, and the final transaction closed for $2,300,000 on July 3, 2007;

      f.    the sellers of 381 East Wayne Court, Alpine, Utah agreed to sell for approximately $725,000 in late 2007, and the transaction closed for $1,585,000 on or about December 7, 2007; and

      g.    the sellers of 1814 Somerset Ridge Drive, Draper, Utah, received $1,115,000 on December 14, 2007, and the transaction closed for $2,400,000.

      17.    It was further a part of the scheme and artifice to defraud that Defendant PORTIA

R. LOUDER recruited straw buyers, including the Defendant CHAD LOUDER, as well as

others, to submit applications to obtain mortgages on the properties listed in this Indictment.

These mortgage loan applications were false and fraudulent because, at times:

5

a.      the buyer was a straw buyer not purchasing the property for himself or herself but at the direction of the Defendant PORTIA R. LOUDER so she could obtain inflated loan proceeds from mortgage lenders;

b.      the straw buyer was promised by the Defendant PORTIA R. LOUDER that she would make the payments on the property, thereby depriving the mortgage lenders of the ability to evaluate the credit of the Defendant LOUDER;

c.      the straw buyer had not made a down payment and invested his or her own funds, resulting in virtually all of the financial risk in the purchase and loan transaction being transferred to the mortgage lender;

d.      the straw buyer was to be paid a kickback or fee from the loan proceeds as an inducement to apply for the loan from the mortgage lenders;

e.      the straw buyer had no intention to occupy the home or to make payments on the loan;

f.      the straw buyer had a materially smaller income stream than represented on his or her loan application, thereby lacking the financial wherewithal to qualify for the loan or to make the monthly payments on the loan after closing; and

g.      the loan closing documentation created the false appearance that the straw buyer had made a down payment to purchase the property.

<u>997 WEST PFEIFFERHORN</u>

18.     In 2005, S.S. and S.S., husband and wife, listed a home at 997 West Pfeifferhorn Drive, Alpine, Utah for sale. The asking price was between $1,200,000 and $1,400,000.

19.     In early 2006, the Defendant PORTIA R. LOUDER called S.S., the wife, and said she was coming over to make an offer on the property. On or about March, 24, 2006, the Defendants PORTIA R. LOUDER and CHAD LOUDER executed a real estate purchase contract (REPC) to purchase the property for $1,340,000. In that REPC, the Defendants and the sellers agreed that the Defendants would lease the property back to the sellers for a minimum of 3 months and a maximum of 12 months.

20.     The Defendant PORTIA R. LOUDER asked the sellers to list the price of 997 Pfeifferhorn on the multiple listing service (MLS) as $3,000,000 to discourage others from making an offer on the property.  Thereafter, on April 25, 2006,  the Defendant PORTIA R. LOUDER told a potential appraiser that the property was a "no brainer its only listing is $3,000,000."

21.     On or about June 2, 2006, E.O., acting at the direction of the Defendant PORTIA R. LOUDER, signed a Joint Venture Agreement with the sellers of the property at 997 Pfeifferhorn.  This agreement allowed E.O., titled as "investor," to sell the property for more than $1,340,000, and keep the excess over that amount.  The sellers were entitled to the agreed upon sales price of $1,340,000 and no more.

22.     On or about June 3, 2006, the Defendants PORTIA R. LOUDER and CHAD LOUDER executed a third real estate purchase contract (REPC) to purchase the property for $1,990,000.  In that REPC, the Defendants and the sellers agreed that the Defendants would lease the property back to the sellers for a minimum of 2 months and a maximum of 12 months. This REPC was not used to close the sale; instead, the sale closed on June 14, 2006, for a price of $2,205,000, based upon another REPC listing that sales price and S.S. and S.S., as the sellers and the Defendants PORTIA and CHAD LOUDER as the buyers.

23.     Sometime in June, 2006, the Defendants PORTIA R. LOUDER and CHAD LOUDER caused a variation on the June 3 REPC to be delivered to a title company that was to be used for the closing.  In the varied contract, the $1,990,000 purchase price had been "whited out" and a $2,705,000 purchase price had been inserted.   Partially as a result of that document, one title company refused to close the sale.

24.     When the sale closed, a joint venture payment of $805,000 was made to E.O. $215,000 of this money went to an account controlled by the Defendant PORTIA R. LOUDER.

25.     The allegations of the Scheme and Artifice to Defraud and those under the heading 997 Pfeifferhorn are realleged and incorporated in Counts 1 and 2.

COUNT 1
(False Statement)

26.     On or about June 30, 2006 In the Central Division of the District of Utah and elsewhere,

**PORTIA R. LOUDER**
and
**CHAD LOUDER,**

Defendants, did knowingly make the false statements listed below for the purpose of influencing the action of American Broker's Conduit, a bank the deposits of which were then insured by the Federal Deposit Insurance Corporation, in connection with a loan application for $2,102,000 for a refinance mortgage on 997 West Pfeifferhorn Drive, Alpine Utah, in that the Defendants falsely stated:

a.     that the original cost of the property was $1,990,000;

b.     that the Defendant CHAD LOUDER's monthly base employment income from Medallion Bank was $28,000;

c.     that the Defendant PORTIA LOUDER's monthly base employment income from Photography by Portia was $21,000; and

d.     that the Defendant's current address was 997 West Pfeifferhorn Drive, Alpine, Utah;

when in truth and in fact, the original cost of the property was approximately $1,340,000, the Defendants did not reside at 997 West Pfeifferhorn Drive, and the monthly income for the Defendant CHAD LOUDER from Medallion Bank and the monthly income for the Defendant PORTIA R. LOUDER from Photography by Portia were far less;

all in violation of 18 U.S.C. §§ 1014 and 2(a).

8

## COUNT 2
### (False Statement)

27.     On or about August 13, 2007, the Central Division of the District of Utah and elsewhere,

## CHAD LOUDER,

Defendant, did knowingly make the false statements listed below for the purpose of influencing the action of National City Bank, a bank the deposits of which were then insured by the Federal Deposit Insurance Corporation, in connection with a loan application for $350,000 for a refinance mortgage on 997 West Pfeifferhorn Drive, Alpine Utah, in that the Defendant falsely stated:

      a.     that the Defendant CHAD LOUDER's monthly base employment income from Photography by Portia was $38,700;

      b.     that the Defendant's current address was 997 West Pfeifferhorn Drive, Alpine, Utah; and

      c.     that the Defendant CHAD LOUDER intended to occupy the property at 997 West Pfeifferhorn Drive, Alpine, Utah as his permanent residence;

when in truth and in fact, he did not reside at 997 West Pfeifferhorn Drive, did not intend to occupy the property as his permanent residence, and his monthly income from Photography by Portia was far less;

all in violation of 18 U.S.C. §1014.

COUNT 3
(Money Laundering)

28.     On or about August 13, 2007, the Central Division of the District of Utah and elsewhere,

**CHAD LOUDER,**

Defendant, knowingly engaged in and caused a monetary transaction in criminally derived property of a value greater than $10,000 that was derived from the specified unlawful activity of a False Statement to a Financial Institution as alleged in Count 2, in that the Defendant caused over $10,000 of the $350,000 loan proceeds from National City Bank to be wire transferred to a bank account in the name of First National Title;

all in violation of 18 U.S.C. §§ 1957 and 2(b).

6021 DRY CREEK

29.     In July, 2006, K.M. and K.M., husband and wife, listed a home at 6021 Dry Creek Road, Highland, Utah, for sale by owner. The asking price was $1,500,000.

30.     On or about July 15, 2006, the Defendants PORTIA R. LOUDER and CHAD LOUDER executed a real estate purchase contract to purchase the property for $1,500,000.

31.     On or about August 14, 2006, the sellers attended an attempted closing on the sale. At that closing, for the first time, the sellers learned that the purchaser would now be S.B. and that the purported sales price was $2,500,000.

32.     Prior to August 14, 2006, the Defendant PORTIA R. LOUDER asked S.B. to act as the purchaser of 6021 Dry Creek. She told S.B. that she wanted to purchase the property but could not at that time, but she would pay him $40,000 to purchase the property for her. Neither the Defendant PORTIA R. LOUDER nor S.B. informed the lenders who provided refinancing of the property that S.B. was not the real purchaser of the property, and that the Defendant PORTIA

10

R. LOUDER was. Therefore, these lenders could not evaluate the credit worthiness of the true purchaser, the Defendant PORTIA R. LOUDER.

33.     The Defendant PORTIA R. LOUDER provided money for the initial purchase of the property. The majority of the financing for the purchase of the property was obtained from hard money lenders.

34.     The Defendant PORTIA R. LOUDER was told by S.B. that he could not afford such an expensive house. She promised S.B. that she would make the payments on the house.

35.     The sale of the property at 6021 Dry Creek closed on September 1, 2006.

36.     On or about November 24, 2006, S.B. applied for and received a $1,750,000 loan from Washington Mutual in order to refinance the Dry Creek property.

37.     On or about March 5, 2007, S. B. applied for and received a second mortgage for $350,000 from National City Loan.

38.     In February, 2007, the Defendant PORTIA R. LOUDER and S.B. formed a limited liability company (LLC) named Havenwood Investments. Havenwood Investments opened a bank account at Zions First National Bank. The signers on the Havenwood Investments bank account were the Defendant PORTIA R. LOUDER and S.B.

39.     Medallion Capital , LLC was a limited liability company under the control of the Defendant PORTIA R. LOUDER.

40.     The allegations of the Scheme and Artifice to Defraud and those under the heading 6021 Dry Creek are realleged and incorporated in Counts 3 through 7.

COUNT 4
(False Statement)

41.     On or about November 24, 2006, In the Central Division of the District of Utah

and elsewhere,

**PORTIA R. LOUDER,**

Defendant, knowingly aided and abetted and caused S.B. to make the false statements listed

below for the purpose of influencing the action of Washington Mutual Bank, a bank the deposits

of which were then insured by the Federal Deposit Insurance Corporation, in connection with a

loan application for $1,750,000 to refinance loans made relative to the purchase of 6021 Dry

Creek Road, Highland, Utah, in that the S.B. falsely stated:

      a.    that 6021 Dry Creek, American Fork, Utah was his present
           address;

      b.    that 7359 [sic] South Lonsdale Drive, Salt Lake City, Utah was
           his former address;

      c.    that 6021 Dry Creek Road, American Fork, Utah was his
           primary residence; and

      d.    that he intended to occupy the property [6021 Dry Creek] as his
           primary  residence;

when in truth and in fact, he did not reside at 6021 Dry Creek and did not intend to reside there

as he was living in the property at 7354 South Lonsdale Drive, as the Defendant PORTIA R.

LOUDER then and there well knew;

all in violation of 18 U.S.C. §§ 1014 and 2(a) and (b).

COUNT 5
(False Statement)

42.     On or about March 5, 2007, in the Central Division of the District of Utah and

elsewhere,

**PORTIA R. LOUDER,**

Defendant, knowingly, aided and abetted and caused S.B. to knowingly make the false

statements listed below for the purpose of influencing the action of National City Bank, a bank

the deposits of which were then insured by the Federal Deposit Insurance Corporation, in

connection with a home equity line of credit for $350,000 relative to 6021 Dry Creek Road,

American Fork, Utah, in that S. B. falsely stated:

      a.     that 6021 Dry Creek was his present address;

      b.     that 7359 [sic] South Lonsdale Drive, Salt Lake City, Utah
            was his former address; and

      c.     that he intended to occupy the property [6021 Dry Creek]
            as his primary residence;

when in truth and in fact, he did not reside at 6021 Dry Creek and did not intend to reside there,

and he was living in the property at 7354 South Lonsdale Drive, as the Defendant PORTIA R.

LOUDER then and there well knew;

all in violation of 18 U.S.C. §§ 1014 and 2(a) and (b).

COUNTS 6 and 7
(Wire Fraud)

      43.     The allegations of the Scheme and Artifice to Defraud and those related to 6021

Dry Creek are incorporated by this reference as though fully set forth herein.

      44.     On or about the dates listed below, in the Central Division of the District of Utah,

**PORTIA R. LOUDER,**

Defendant herein, having devised and intended to devise the above described a scheme and

artifice to defraud regarding financing relative to the property at 6021 Dry Creek, and for

obtaining money and property by means of false and fraudulent pretenses, representations, and

promises, for the purpose of executing said scheme and artifice to defraud, did cause to be

13

transmitted by means of wire communication in interstate commerce certain writings, signs and signals, each such use of wire communication being a separate count of this Indictment;

all in violation of 18 U.S.C. §§ 1343, 1349 and § 2(b).

| Count | Date | Wire Transmission |
|-------|------|-------------------|
| 6 | 11/29/06 | Wire Transfer of $1,801,226.64 from Washington to Utah |
| 7 | 3/9/07 | Wire Transfer of $352,922 from Ohio to Utah |

## COUNT 8
### (Money Laundering)

45.     On or about March 9, 2007, in the Central Division of the District of Utah and elsewhere,

## PORTIA R. LOUDER,

Defendant, knowingly engaged in a monetary transaction and did aid, abet, counsel, command, induce and procure and cause S.B. to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that was derived from the specified unlawful activity of a False Statement to a Financial Institution as alleged in Count 4 and Wire Fraud in Count 6, in that the Defendant caused $346,275 of the $350,000 loan proceeds from National City Bank to be wire transferred from to a bank account in the name of Havenwood Investments at Zions First National Bank into a bank account in the name of Medallion Capital LLC at Zions First National Bank; all in violation of 18 U.S.C. §1957 and §§2(a) and (b).

### 1747 SAGE HOLLOW

46.     In or about September, 2006, L.P. through Plateau Homes, offered a home for sale at 1747 East Sage Hollow Drive, Draper, Utah.

14

47.     On or about September 11, 2006, the Defendant DUSTIN WILCOX executed a Real Estate Purchase Contract offering to buy the Sage Hollow property for $1,070,000. An addendum to this contract increased the sale price to $1,095,000.

48.     When the sale closed, the sales price at closing was increased to $2,700,000. Despite that price, the seller received his profit as though the property sold for approximately $1,095,000.

49.     The settlement statement for the sale, which closed on or about April 6, 2007, reflects a payment of $600,000 made on behalf of the borrower, the Defendant DUSTIN WILCOX, by Kentucky Money. Kentucky Money transferred $600,000 to the title company and then was repaid the money when a refinance loan was obtained from Washington Mutual, making the payment a phantom payment. Kentucky Money was setup by a friend of Defendant DUSTIN WILCOX at Defendant DUSTIN WILCOX's suggestion. The $600,000 that Kentucky Money used to send to the title company was provided by Medallion Capital, a company controlled by the Defendant PORTIA R. LOUDER.

50.     The settlement statement also reflects that Waveland Ent., LLC, had a notice of interest in the amount of $1,540,000. The seller, L.K., did not know why this was listed on the settlement statement. The notice of interest was signed by the Defendant CHAD LOUDER as the Managing Member of Waveland Enterprises, LLC.

51.     The Kentucky Money and Waveland transactions were designed, in part, to justify the increase in the price of the Sage Hollow Property from $1,095,000 to $2,700,000.

COUNTS 9 and 10
(Wire Fraud)

52.     The allegations of the Scheme and Artifice to Defraud and those related to 1747 Sage Hollow are incorporated by reference as though fully set forth herein.

15

53.    On or about the dates listed below, in the Central Division of the District of Utah,

**PORTIA R. LOUDER,**
**CHAD LOUDER**
and
**DUSTIN WILCOX,**

Defendants herein, having devised and intended to devise the above described scheme and

artifice to defraud regarding financing relative to the property at 1747 Sage Hollow, and for

obtaining money and property by means of false and fraudulent pretenses, representations, and

promises, for the purpose of executing said scheme and artifice to defraud, and attempting to do

so, did cause to be transmitted by means of wire communication in interstate commerce certain

writings, signs and signals, each such use of wire communication being a separate count of this

Indictment;

each count in violation of 18 U.S.C. §§ 1343, 1349 and § 2(a).

| Count | Date | Wire Transmission |
|-------|------|-------------------|
| 9 | 05/09/07 | E-mail from CHAD LOUDER to Executive Title at 2:14 p.m. |
| 10 | 05/09/07 | E-mail from CHAD LOUDER to Executive Title at 3:46 p.m. |

COUNT 11
(Money Laundering)

54.    On or about April 10, 2007,  in the Central Division of the District of Utah and

elsewhere,

**PORTIA R. LOUDER,**
**CHAD LOUDER**
and
**DUSTIN WILCOX,**

Defendants, knowingly engaged in a monetary transaction and did aid, abet, counsel, command,

induce and procure a monetary transaction in criminally derived property of a value greater than

$10,000 that was derived from the specified unlawful activity of a Wire Fraud as alleged in

16

Count 9 and Wire Fraud in Count 10, in that the Defendants caused $540,000 of the money paid to Waveland Enterprises be deposited in a bank account in the name of Epik Funding at Zions First National Bank; all in violation of 18 U.S.C. §§ 1957 and 2(a).

COUNT 12
(False Statement)

55.    On or about May 11, 2007, in the Central Division of the District of Utah and elsewhere,

**PORTIA R. LOUDER,**
**CHAD LOUDER**
and
**DUSTIN WILCOX,**

Defendants, did knowingly make a false statement listed below for the purpose of influencing the action of Washington Mutual, a bank the deposits of which were then insured by the Federal Deposit Insurance Corporation, in connection with a loan application for $2,160,000 for a refinance mortgage on 1747 East Sage Hollow, Draper, Utah, in that the Defendants falsely stated, conspired to state, and aided and abetted that the Defendant DUSTIN WILCOX's monthly base employment income from Epik Photography was $80,000; when in truth and in fact, the monthly income for the Defendant DUSTIN WILCOX was far less;

all in violation of 18 U.S.C. §§ 1014 and 2(a).

354 DEERFIELD

56.    In or about January, 2007, the Defendant PORTIA R. LOUDER negotiated the purchase of a property at 354 N. Deerfield Drive, Alpine, Utah. The sales price negotiated with the seller, P.M., was between $805,000 and $839,000.

57.    By the time of closing, the sales price had been raised to $950,000.

58.    The purchaser of the property at 354 Deerfield was K.W., Defendant PORTIA R. LOUDER's mother.

17

59.     On or about March 26, 2007, the Defendant PORTIA R. LOUDER caused the

K.W. to sign a loan application for a $760,000 loan for 354 Deerfield. The loan application

falsely stated that the K.W. earned $20,000 a month, the property will be her primary residence,

and that she had a balance of $439,000 in an account with Johnson and Associates.

COUNT 13
(Wire Fraud)

60.     The allegations of the Scheme and Artifice to Defraud and those related to 354

Deerfield are incorporated by this reference as though fully set forth herein.

61.     On or about the date listed below, in the Central Division of the District of Utah,

**PORTIA R. LOUDER,**

Defendant herein, having devised and intended to devise the above described a scheme and

artifice to defraud regarding financing for to the property at 354 Deerfield, and for obtaining

money and property by means of false and fraudulent pretenses, representations, and promises,

for the purpose of executing said scheme and artifice to defraud and attempting to do so, did

cause to be transmitted by means of wire communication in interstate commerce, certain

writings, signs and signals;

all in violation of 18 U.S.C. §§ 1343, 1349 and § 2(a).

| Count | Date | Wire Transmission |
|-------|------|-------------------|
| 13 | 03/27/07 | Wire of Loan proceeds $765,382.53 from Texas to Utah. |

891 HEALEY

62.     In 2007, M.A. built a home at 891 Healey Homestead, Alpine Utah, and offered it

for sale by owner.

18

63.     R.D. acted as a finder of properties for the Defendant PORTIA R. LOUDER, who wanted properties that were for sale by owner, among other things.  R.D. found the Healey property for the Defendant PORTIA R. LOUDER.

64.     The Defendant DUSTIN WILCOX offered to buy the Healey home for $900,000 but told M.A. he wanted documents to reflect a sales price of more than $1,000,000.

65.     On April 2, 2007, M.A.'s attorney sent an e-mail to the Defendant DUSTIN WILCOX stating, among other things, that "this kind of dual documentation... raises the specter of mortgage fraud."

66.     Thereafter, on or about May 10, 2007, the Defendant PORTIA R. LOUDER signed a real estate purchase contract (REPC) on behalf of Medallion Capital, offering to buy the Healey property for $900,000.

67.     On or about June 18, 2007, the Defendant PORTIA R. LOUDER signed an addendum to the previous REPC stating that "Buyer to be Epik Funding, LLC."

68.     On or about June 18, 2007 a Settlement Statement was completed showing that Epik Funding bought the Healey property from M.A. for $900,000.

69.     On or about July 3, 2007, a REPC was prepared, in which the Defendant CHAD LOUDER offered to purchase the Healey property for $2,300,000; The seller on the REPC was Epic Funding, with the Defendant DUSTIN WILCOX named as signing on behalf of Epic Funding. The Defendant DUSTIN WILCOX is the Defendant PORTIA R. LOUDER's brother and the Defendant CHAD LOUDER is the Defendant PORTIA R. LOUDER's husband.

70.     On or about August 10, 2007, a Settlement Statement was prepared showing CHAD LOUDER was buying the Healey property for $2,300,000 from Epik Funding.

71.     As a result of that sale, after the Defendant CHAD LOUDER obtained a

$1,840,000 loan from Washington Mutual, Epik Funding received $1,456,396.69 from the loan

proceeds. $1,456,369.69 was transferred from Epik Funding to Medallion Capital.

72.     On the loan application that the Defendant CHAD LOUDER submitted to

Washington Mutual on or about August 10, 2007, he represented that he intended that 891

Healey would be his permanent residence, even though he represented on August 13, 2007 to

National City Bank that 997 Pfeifferhorn would be his permanent residence. At that time, the

Defendant CHAD LOUDER was residing at 6021 Dry Creek, Highland, Utah.

COUNT 14
(False Statement)

73.     On or about August 10, 2007 in the Central Division of the District of Utah and

elsewhere,

**PORTIA R. LOUDER**
and
**CHAD LOUDER**

Defendants, did knowingly make the false statements listed below, and did aid, abet, counsel,

command, induce and procure said false statements, for the purpose of influencing the action of

Washington Mutual Bank, a bank the deposits of which were then insured by the Federal Deposit

Insurance Corporation, in connection with a loan application for $1,840,000 for a mortgage on

891 South Healey Homestead Circle, Alpine Utah, in that the Defendants falsely stated:

      a.     that the Defendant CHAD LOUDER's monthly base employment income
             from Portia Inc./Photography by Portia was $43,000;

      b.     that the Defendant CHAD LOUDER's current address was 997 West
             Pfeifferhorn Drive, Alpine, Utah; and

      c.     that the Defendant CHAD LOUDER intended to occupy the property as
             his primary residence.

20

when in truth and in fact, the Defendant did not reside at 997 West Pfeifferhorn Drive, the

monthly income for the Defendant CHAD LOUDER was far less, and the Defendant CHAD

LOUDER did not intend to occupy the property as his primary residence;

all in violation of 18 U.S.C. §§ 1014 and 2(a).

COUNT 15
(Money Laundering)

74.    On or about August 14, 2007 in the Central Division of the District of Utah and

elsewhere,

**PORTIA R. LOUDER,**
**CHAD LOUDER**
and
**DUSTIN WILCOX,**

Defendants, knowingly engaged in a monetary transaction and did aid, abet, counsel, command,

induce and procure and cause a monetary transaction in criminally derived property of a value

greater than $10,000 that was derived from the specified unlawful activity of a False Statement

to a Financial Institution as alleged in Count 14, in that the Defendant caused $1,456,369.69 of

the loan proceeds from Washington Mutual be wire transferred from a bank account in the name

of Epik Funding at Zions First National Bank into a bank account in the name of Medallion

Capital LLC at Zions First National Bank;

all in violation of 18 U.S.C. § 1957 and §§ 2(a) and (b)

381 WAYNE

75.    In or about late 2007, J.R. negotiated the sale of a property at 381 East Wayne

Court, Alpine Utah for a sales price of approximately $725,000 or $730,000 with the Defendant

PORTIA R. LOUDER.

76.    An Option Contract for Sale and Purchase of the 381 Wayne property, dated

November 30, 2007 was signed, supposedly between J.R. as option seller and Epic Loans as

21

option buyer, with a purchase price of $705,000. J.R.'s signature on the document was forged.

Epic Loans was represented by J.B.R. the Defendant PORTIA R. LOUDER's son. J.B.R.'s

signature was forged on the Option Contract.

77.     When the sale closed, J.R. (the seller) learned for the first time that the buyer was

K.W., the mother of the Defendants PORTIA R. LOUDER and DUSTIN WILCOX, and the

mother-in-law of the Defendant CHAD LOUDER. Supposedly, on December 5, 2007, a REPC

was created listing K.W. as the purchaser and J.R. as the seller. J.R.'s signature on the REPC

was forged. The purchase price on the REPC was $1,585,000.

78.     On or about December 6, 2007, the Defendant CHAD LOUDER sent First

National Title an e-mail stating the purchase price for 381 Wayne was $1,585,000, Epik Loans to

receive $875,000, J.R. (seller) and Builder to receive $705,000, and Earnest was $5,000 received

by Epic Loans and taken from Epic's proceeds.

79.     On or about November 26, 2007, the Defendant CHAD LOUDER electronically

submitted information to Active Finance Group (AFG) requesting a $1,100,000 loan for a

purchase price of $1,600,000.

80.     AFG loaned $1,000,000 to fund the purchase. Supposedly, the loan was made on

a loan to value ratio of 65%, when had the true purchase price been disclosed, the loan to value

ratio would have been over 125%.

81.     The Defendant PORTIA R. LOUDER through Medallion Capital paid

$632,658.14 as a down payment, but received $867,837.20, resulting in a profit to the

Defendants of $230,179.06.

COUNT 16 and 17
(Wire Fraud)

82.     The allegations of the Scheme and Artifice to Defraud and those related to 381

Wayne Court are incorporated by this reference as though fully set forth herein.

83.     On or about the dates listed below, in the Central Division of the District of Utah,

**PORTIA R. LOUDER**
and
**CHAD LOUDER**

Defendants herein, having devised and intended to devise the above described a scheme and

artifice to defraud regarding financing relative to the property at 381 Wayne Court, and for

obtaining money and property by means of false and fraudulent pretenses, representations, and

promises, for the purpose of executing said scheme and artifice to defraud, did cause to be

transmitted by means of wire communication in interstate commerce certain writings, signs and

signals, each such use of wire communication being a separate count of this Indictment;

all in violation of 18 U.S.C. §§ 1343, 1349 and § 2(a).

| Count | Date | Wire Transmission |
|---|---|---|
| 16 | 11/26/07 | E-mail from CHAD LOUDER to AFG |
| 17 | 12/10/07 | $1,000,000 from AFG - Colorado to Utah |

1814 SOMERSET RIDGE

84.     In 2007, T.D. and his wife owned a home at 1814 Somerset Ridge, Draper, Utah.

The asking price for the home was $1,125,000.

85.     On December 14, 2007, the Defendant PORTIA R. LOUDER agreed to buy the

home at 1814 Somerset Ridge for $1,115,000. Despite that, the Defendant PORTIA R.

LOUDER created a REPC for the home with Epic Loans as the seller, on the first page, and JTR

LLC as the seller on the last page. The purported representative of the seller was J.R., the son of

23

the Defendant PORTIA LOUDER.   J.R. had no involvement in the transaction and knew nothing about it.

86.     The REPC described in the immediately preceding paragraph listed R.S. as the purchaser. The purchase price listed on the REPC was $2,480,000.  R.S. executed documents for the purchase of the property at the behest of the Defendant PORTIA R. LOUDER.  After the sale closed, R.S. did not know that the sale had gone through in her name until she was contacted by Active Finance Group (AFG), the lender, and asked why she was not making payments on the property.

87.     On December 14, 2007, Active Finance Group loaned $1,495,000 for the purchase of the property, with R.S. as the buyer and JTR, LLC as the seller at a price of $2,480,000.  AFG believed that the loan amount as compared with the value of the property (the loan to value ratio) was 65%, when in fact, AFG was loaning more than the real price of the property, $1,115,000.  AFG also did not know that the real purchaser was the Defendant PORTIA R. LOUDER.  It further did not know that the purported down payment of $100,000 was false, and that the Defendant PORTIA R. LOUDER had provided, through Waveland Financing, another entity that the Defendant PORTIA R. LOUDER controlled, almost $400,000 so the sale could go through.

88.     Epic Loans, yet another entity controlled by the  Defendant PORTIA R. LOUDER, received $1,261,632.50 from the transaction.

COUNT 18
(Wire Fraud)

89.     The allegations of the Scheme and Artifice to Defraud and those under the heading 1814 Somerset Ridge are realleged and incorporated in this Count.

90.     On or about December 18, 2007,  in the Central Division of the District of Utah,

24

**PORTIA R. LOUDER,**

Defendant herein,  having devised and intended to devise the above described  a scheme and

artifice to defraud regarding financing relative to the property at 1814 Somerset, and for

obtaining money and property by means of false and fraudulent pretenses, representations, and

promises and attempting to do so, for the purpose of executing said scheme and artifice to

defraud, did cause to be transmitted by means of wire communication in interstate commerce

certain writings, signs and signals, that is, a wire transfer of $1,495,000 from Arizona to Utah;

all in violation of 18 U.S.C. §§ 1343, 1349 and § 2(b).

<u>COUNT 19</u>
(Conspiracy)

91.    The allegations of the Scheme and Artifice to Defraud and of Counts 1 through 19

of this Indictment are realleged and incorporated in this Count.

92.    From on or about June, 2006, until on or about May, 2008, in the Central Division

of the District of Utah and elsewhere,

**PORTIA R. LOUDER,**
**CHAD LOUDER**
and
**DUSTIN WILCOX,**

Defendants, did knowingly conspire, combine, confederate and agree with others known and

unknown to commit one or more than one of the following offenses against the United States of

America:

a.    False Statement to a Financial Institution in violation of 18 U.S.C. § 1014;

b.    Wire Fraud in violation of 18 U.S.C. § 1343; and

c.    Money Laundering in violation of 18 U.S.C. § 1957.

25

<u>OVERT ACTS</u>

In furtherance of the conspiracy and to effect the objects of the conspiracy, the Defendants

committed the following as Overt Acts: each of the acts in Counts 1 through 19 of this

Indictment;

all in violation of 18 U.S.C. § 371.

<u>NOTICE OF INTENTION TO SEEK CRIMINAL FORFEITURE</u>

(18 U.S.C. Section 981(a)(1)(C); 28 U.S.C. Section 2461)

As a result of committing the felony offenses alleged in the Counts of this Indictment, each of

which is punishable by imprisonment for more than one year, defendants PORTIA R. LOUDER,

CHAD LOUDER and DUSTIN WILCOX, shall forfeit to the United States pursuant to 18

U.S.C. Section 981(a)(1)(C); 28 U.S.C. Section 2461 any and all property constituting or derived

from any proceeds said Defendants obtained directly or indirectly as a result of the said felony

charges alleged in the Counts listed in this Notice, and any property traceable thereto.

As to PORTIA R. LOUDER: The approximate aggregate sum of Three Million Nine Hundred

Thousand Dollars ($3,900,000) in United States currency received and diverted by PORTIA R.

LOUDER, in connection with the above-referenced offenses.

As to CHAD LOUDER: The approximate aggregate sum of Two Million Four Hundred and

Fifty Thousand Dollars ($2,450,000) in United States currency received and diverted by CHAD

LOUDER, in connection with the above-referenced offenses.

As to DUSTIN WILCOX: The approximate sum of $2,160,000.

A TRUE BILL:

/S/
_____
FOREPERSON OF THE GRAND JURY

CARLIE CHRISTENSEN
Attorney for the United States, Acting Under Authority Conferred by 28 U.S.C. § 515

STEWART C. WALZ
Assistant United States Attorney