CARLIE CHRISTENSEN, Attorney for the United States, Acting Under Authority
Conferred by 28 U.S.C. § 515 (No. 633)
STEWART WALZ, Senior Litigation Counsel (No. 3347)
KARIN FOJTIK, Assistant United States Attorney (No. 7527)
ALICIA COOK, Assistant United States Attorney (No. 8851)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

APR 1 6 2014

D. MARK JONES, CLERK
BY_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:11CR00876-DAK |
| Plaintiff, | : | SECOND SUPERSEDING |
| | : | I N D I C T M E N T |
| v. | : | 18 U.S.C. §§ 1343, 1349 (Wire Fraud); |
| | : | 18 U.S.C. § 1014 (False Statement to a |
| PORTIA R. LOUDER, | : | Financial Institution); 18 U.S.C. § |
| CHAD LOUDER, | : | 1957 (Money Laundering); 18 U.S.C. |
| | : | § 371 (Conspiracy); 18 U.S.C. §§ 2(a) |
| | : | and 2(b)(Aiding and Abetting; |
| Defendants. | : | Willfully Causing Another to Commit |
| | : | a Crime) |

The Grand Jury Charges:

### BACKGROUND

At all times relevant to this Indictment:

1.      Defendant PORTIA R. LOUDER was an individual engaged in real estate

transactions.  She was the driving force behind the transactions detailed in this Indictment.

2.      Defendant CHAD LOUDER was the husband of the Defendant PORTIA R. LOUDER.

3.      Dustin Wilcox was the brother of Defendant PORTIA R. LOUDER.

4.      Various "straw buyers" and nominees participated in the real estate purchase and loan transactions identified in this Indictment. Straw buyers and nominees were individuals who fronted for the Defendants in the real estate transactions that are the subject of this Indictment, often with the purpose of hiding Defendants' participation in and manipulation of the transactions.

5.      Fair market value of a home is the price a willing seller will accept and a willing buyer will pay when both are acting in his or her self-interest. The prices of the homes that became the basis for loans issued were not based upon fair market value.

6.      As part of the mortgage application process, mortgage lenders required truthful and accurate loan applications.

7.      At the loan closings, the closing agents were required to prepare a Settlement Statement ("Form HUD 1") which accurately reflected the receipt and disbursement of transaction funds.  The Form HUD 1 also showed, among other things, the down payment paid by the borrower and funds due to the seller.

THE SCHEME AND ARTIFICE TO DEFRAUD

8.      Beginning in early 2006 to on or after May, 2008, in the Central Division of the District of Utah, and elsewhere,

**PORTIA R. LOUDER, and**
**CHAD LOUDER**

Defendants herein and others, devised and intended to devise, a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations,

2

and promises and omissions of material facts by obtaining real estate loans from one or more

mortgage lenders, as detailed below. In executing and attempting to execute the scheme and

artifice to defraud, the Defendants:

a. knowingly transmitted and caused to be transmitted, by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343 (Wire Fraud);

b. knowingly made false statements and caused false statements to be made to financial institutions, in violation of 18 U.S.C. § 1014;

c. conducted and caused to be conducted financial transactions with proceeds of the specified unlawful activities (i.e., wire fraud, and false statements) in violation of 18 U.S.C. § 1957.

OBJECT OF THE SCHEME AND ARTIFICE TO DEFRAUD

9.     It was the object of the scheme and artifice to defraud for the Defendants to use

false statements, misrepresentations, and omissions and concealment of facts to obtain loans

fraudulently from the mortgage lenders, and to profit thereby.

MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

10.     It was a part of the scheme and artifice to defraud that the Defendants targeted for

purchase expensive homes for sale by owner, often those that had not been listed on the Multiple

Listing Service (MLS). This way, the Defendants could, through the substitution of nominees

and straw parties, raise the purchase price of a home without the lender's learning of the sales

price set by the original seller.

11.     It was further a part of the scheme and artifice to defraud that Defendants

PORTIA R. LOUDER and CHAD LOUDER, purchased and directed the purchase of the

following properties:

a.     997 West Pfeifferhorn Drive, Alpine Utah;

3

      b.       6021 Dry Creek Road, Highland, Utah;

      c.       1747 Sage Hollow Drive, Draper, Utah;

      d.       354 Deerfield Drive, Alpine, Utah;

      e.       891 Healey Homestead Circle, Alpine, Utah;

      f.       381 East Wayne Court, Alpine, Utah; and

      g.       1814 Somerset Ridge Drive, Draper, Utah.

12.     It was further a part of the scheme and artifice to defraud that the Defendants, after finding a home to purchase, offered to purchase the home at or near the sellers' asking price.

13.     It was further a part of the scheme and artifice to defraud that the Defendants typically told or had someone tell the seller that there was a new buyer for the property who would purchase the property for substantially more than the original sales price, but that the original seller would get only the price agreed upon between the seller and a Defendant or a nominee.

14.     It was further a part of the scheme and artifice to defraud that the Defendants, at times, used a straw party, or nominee, to form a Joint Venture, or other device, so the defendants would receive proceeds from the loans obtained at artificially inflated sales prices.

15.     It was further a part of the scheme and artifice to defraud that the Defendant, PORTIA R. LOUDER commissioned appraisals on the properties, even though she was not listed as either the purchaser or the seller.  PORTIA R. LOUDER, paid as much as $5,000 for an appraisal, even though an appraisal on an average home would typically cost $500 or less, and an appraisal on a high end home typically cost about $1,500. The Defendant PORTIA R. LOUDER paid approximately $380,000 to appraisers during 2006 through 2007.

4

16.     It was further a part of the scheme and artifice to defraud that by concealing the initial sales price, the Defendants were able artificially to increase the prices of homes disclosed to lenders by drastic amounts. In this way:

a.     the sellers of 997 West Pfeifferhorn Drive, Alpine Utah, agreed to sell for $1,340,000 in June 2006, and the transaction closed for $2,205,000 on June 14, 2007;

b.     the sellers of 6021 Dry Creek Road, Highland, Utah agreed to sell for $1,500,000 on September 1, 2006, and the transaction closed for $2,500,000 on August 14, 2006;

c.     the sellers of 1747 Sage Hollow Drive, Draper, Utah agreed to sell for $1,095,000 on or about September 11, 2006, and the transaction closed for $2,700,000 on April 6, 2007;

d.     the sellers of 354 Deerfield Drive, Alpine, Utah agreed to sell for approximately $839,000 in January, 2007, and the transaction closed for $950,000 on March 27, 2007;

e.     the sellers of 891 Healey Homestead Circle, Alpine, Utah agreed to sell for $900,000 on May 10, 2007, and the final transaction closed for $2,300,000 on July 3, 2007;

f.     the sellers of 381 East Wayne Court, Alpine, Utah agreed to sell for approximately $725,000 in late 2007, and the transaction closed for $1,585,000 on  December 7, 2007; and

g.     the sellers of 1814 Somerset Ridge Drive, Draper, Utah, agreed to sell for $1,115,000 on December 14, 2007, and the transaction closed for $2,400,000.

17.     It was further a part of the scheme and artifice to defraud that Defendants submitted, or caused to be submitted, applications to obtain mortgages, refinances, and other loans related to the properties listed in this Second Superseding Indictment.  These loan applications were false and fraudulent because, at times:

a.     the buyer was a straw buyer not purchasing the property for himself or herself but at the direction of the Defendants so they could obtain inflated loan proceeds from lenders;

b.     the straw buyer was promised by the Defendant, PORTIA R. LOUDER, that she would make the payments on the property, thereby depriving the lenders of the ability to evaluate the credit of the Defendants;

c.     the straw buyer had not made a down payment and invested his or her own funds, resulting in virtually all of the financial risk in the purchase and loan transaction being transferred to the lender;

d.     the straw buyer was to be paid a kickback or fee as an inducement to apply for the loan from the mortgage lenders;

e.     the straw buyer had no intention to occupy the home or to make payments on the loan;

f.     the straw buyer had a materially smaller income stream than represented on his or her loan application, thereby lacking the financial wherewithal to qualify for the loan or to make the monthly payments on the loan after closing; and

g.     the loan closing documentation created the false appearance that the straw buyer had made a down payment to purchase the property.

## 997 WEST PFEIFFERHORN

18.     In 2005, S.S. and S.S., husband and wife, listed a home at 997 West Pfeifferhorn Drive, Alpine, Utah for sale. The asking price was between $1,200,000 and $1,400,000.

19.     In early 2006, the Defendant PORTIA R. LOUDER called S.S., the wife, and said she was coming over to make an offer on the property. On or about March, 24, 2006, the Defendants PORTIA R. LOUDER and CHAD LOUDER executed a real estate purchase contract (REPC) to purchase the property for $1,340,000. In that REPC, the Defendants and the sellers agreed that the Defendants would lease the property back to the sellers for a minimum of 3 months and a maximum of 12 months.

6

20.     The Defendant, PORTIA R. LOUDER, asked the sellers to list the price of 997 Pfeifferhorn on the multiple listing service (MLS) as $3,000,000 to discourage others from making an offer on the property. Thereafter, on April 25, 2006, Defendant, PORTIA R. LOUDER, told a potential appraiser that the property was a "no brainer its only listing is $3,000,000."

21.     On or about June 2, 2006, E.O., acting at the direction of the Defendant PORTIA R. LOUDER, signed a Joint Venture Agreement with the sellers of the property at 997 Pfeifferhorn. This agreement allowed E.O., titled as "investor," to sell the property for more than $1,340,000, and keep the excess over that amount. The sellers were entitled to the agreed upon sales price of $1,340,000 and no more.

22.     On or about June 3, 2006, the Defendants PORTIA R. LOUDER and CHAD LOUDER executed a third real estate purchase contract (REPC) to purchase the property for $1,990,000. In that REPC, the Defendants and the sellers agreed that the Defendants would lease the property back to the sellers for a minimum of 2 months and a maximum of 12 months. This REPC was not used to close the sale; instead, the sale closed on June 14, 2006, for a price of $2,205,000, based upon another REPC listing that sales price and S.S. and S.S., as the sellers and the Defendants PORTIA and CHAD LOUDER as the buyers.

23.     Sometime in June, 2006, the Defendants PORTIA R. LOUDER and CHAD LOUDER caused a variation on the June 3 REPC to be delivered to a title company that was to be used for the closing. In the varied contract, the $1,990,000 purchase price had been "whited out" and a $2,705,000 purchase price had been inserted. Partially as a result of that document, one title company refused to close the sale.

7

24.     When the sale finally closed, on June 14, 2007, a joint venture payment of $805,000 was made to E.O. $215,000 of this money went to an account controlled by the Defendant PORTIA R. LOUDER.

25.     On or about June 30, 2006, the Defendants made statements on a loan application related to 997 Pfeifferhorn, that indicated that the Defendants intended to reside full time at 997 Pfeifferhorn; that CHAD LOUDER's monthly income at Medallion bank was $28,000, and that the original cost of the property was $1,990,000, when in truth the original price of the house was $1,340,000, the Defendants did not reside at 997 Pfeifferhorn, and CHAD LOUDER'S monthly income from Medallion Bank was far less.

26.     The allegations of the Scheme and Artifice to Defraud and those under the heading 997 Pfeifferhorn are realleged and incorporated in Counts 1 and 2.

COUNT 1
(False Statement)

27.     On or about August 13, 2007, the Central Division of the District of Utah and elsewhere,

**CHAD LOUDER,**

Defendant, and others, did knowingly make the false statements listed below for the purpose of influencing the action of National City Bank, a bank the deposits of which were then insured by the Federal Deposit Insurance Corporation, in connection with a loan application for $350,000 for a refinance mortgage on 997 West Pfeifferhorn Drive, Alpine Utah, in that the Defendant falsely stated:

      a.     that the Defendant CHAD LOUDER's monthly base employment income from Photography by Portia was $38,700;

      b.     that the Defendant's current address was 997 West Pfeifferhorn Drive, Alpine, Utah; and

8

      c.     that the Defendant CHAD LOUDER intended to occupy the property at 997 West Pfeifferhorn Drive, Alpine, Utah as his permanent residence;

when in truth and in fact, he did not reside at 997 West Pfeifferhorn Drive, did not intend to occupy the property as his permanent residence, and his monthly income from Photography by Portia was far less; all in violation of 18 U.S.C. §1014.

## COUNT 2
### (Money Laundering)

28.     On or about August 22, 2007, the Central Division of the District of Utah and elsewhere,

## CHAD LOUDER,

Defendant, and others, knowingly engaged in and caused a monetary transaction in criminally derived property of a value greater than $10,000 that was derived from the specified unlawful activity of a False Statement to a Financial Institution as alleged in Count 1, in that the Defendant caused over $10,000 of the $350,000 loan proceeds from National City Bank, to be transferred from a bank account in the name of Waveland Enterprises at Zions Bank, and then to be transferred into a bank account in the name of First National Title; all in violation of 18 U.S.C. §§ 1957 and 2(b).

## 6021 DRY CREEK

29.     In July, 2006, K.M. and K.M., husband and wife, listed a home at 6021 Dry Creek Road, Highland, Utah, for sale by owner. The asking price was $1,500,000.

30.     On or about July 15, 2006, the Defendants PORTIA R. LOUDER and CHAD LOUDER executed a real estate purchase contract to purchase the property for $1,500,000.

31.     On or about August 14, 2006, the sellers attended an attempted closing on the

sale.  At that closing, for the first time, the sellers learned that the purchaser would now be S.B. and that the purported sales price was $2,500,000.

32.     Prior to August 14, 2006, the Defendant PORTIA R. LOUDER asked S.B. to act as the purchaser of 6021 Dry Creek. She told S.B. that she wanted to purchase the property but could not at that time, but she would pay him $40,000 to purchase the property for her.  Neither the Defendant PORTIA R. LOUDER nor S.B. informed the lenders who provided refinancing of the property that S.B. was not the real purchaser of the property, and that the Defendant PORTIA R. LOUDER was. Therefore, these lenders could not evaluate the credit worthiness of the true purchaser, the Defendant PORTIA R. LOUDER.

33.     On September 1, 2006, the Defendant, PORTIA R. LOUDER provided money for the purchase of the property. The majority of the financing for the purchase of the property was obtained from hard money lenders.

34.     The Defendant PORTIA R. LOUDER was told by S.B. that he could not afford such an expensive house. She promised S.B. that she would make the payments on the house.

35.     On or about November 24, 2006, S.B. applied for and received a $1,750,000 loan from Washington Mutual in order to refinance the Dry Creek property.

36.     On or about March 5, 2007, S. B. applied for and received a second mortgage for $350,000 from National City Loan.

37.     In February, 2007, the Defendant PORTIA R. LOUDER and S.B. formed a limited liability company (LLC) named Havenwood Investments. Havenwood Investments opened a bank account at Zions First National Bank. The signers on the Havenwood Investments bank account were the Defendant PORTIA R. LOUDER and S.B.

10

38.     Medallion Capital, LLC was a limited liability company under the control of the
Defendant PORTIA R. LOUDER.

39.     The allegations of the Scheme and Artifice to Defraud and those under the
heading 6021 Dry Creek are realleged and incorporated in Counts 3 through 7.

### COUNT 3
### (False Statement)

40.     On or about November 24, 2006, in the Central Division of the District of Utah
and elsewhere,

### PORTIA R. LOUDER,

Defendant, and others, knowingly aided and abetted and caused S.B. to make the false statements

listed below for the purpose of influencing the action of Washington Mutual Bank, a bank the

deposits of which were then insured by the Federal Deposit Insurance Corporation, in connection

with a loan application for $1,750,000 to refinance loans made relative to the purchase of 6021

Dry Creek Road, Highland, Utah, in that the S.B. falsely stated:

    a.     that 6021 Dry Creek, Highland, Utah was his present address;

    b.     that 7359 [sic] South Lonsdale Drive, Salt Lake City, Utah was
           his former address;

    c.     that 6021 Dry Creek Road, Highland, Utah was his
           primary residence; and

    d.     that he intended to occupy the property [6021 Dry Creek] as his
           primary residence;

when in truth and in fact, he did not reside at 6021 Dry Creek and did not intend to reside there

as he was living in the property at 7354 South Lonsdale Drive, as the Defendant PORTIA R.

LOUDER then and there well knew; all in violation of 18 U.S.C. §§ 1014 and 2(a) and (b).

11

<u>COUNT 4</u>
(False Statement)

41.    On or about March 5, 2007, in the Central Division of the District of Utah and elsewhere,

**PORTIA R. LOUDER,**

Defendant, and others, knowingly, aided and abetted and caused S.B. to knowingly make the false statements listed below for the purpose of influencing the action of National City Bank, a bank the deposits of which were then insured by the Federal Deposit Insurance Corporation, in connection with a refianance loan for $350,000 relative to 6021 Dry Creek Road, Highland, Utah, in that S. B. falsely stated:

        a.    that 6021 Dry Creek was his present address;

        b.    that 7359 [sic] South Lonsdale Drive, Salt Lake City, Utah
            was his former address; and

        c.    that he intended to occupy the property [6021 Dry Creek]
            as his primary residence;

when in truth and in fact, he did not reside at 6021 Dry Creek and did not intend to reside there, and he was living in the property at 7354 South Lonsdale Drive, as the Defendant PORTIA R. LOUDER then and there well knew; all in violation of 18 U.S.C. §§ 1014 and 2(a) and (b).

<u>COUNTS 5 and 6</u>
(Wire Fraud)

42.    The allegations of the Scheme and Artifice to Defraud and those related to 6021 Dry Creek are incorporated by this reference as though fully set forth herein.

43.    On or about the dates listed below, in the Central Division of the District of Utah,

**PORTIA R. LOUDER,**

Defendant herein, and others, having devised and intended to devise the above described scheme

and artifice to defraud regarding financing relative to the property at 6021 Dry Creek, and for

obtaining money and property by means of false and fraudulent pretenses, representations, and

promises, for the purpose of executing said scheme and artifice to defraud, did cause to be

transmitted by means of wire communication in interstate commerce certain writings, signs and

signals, each such use of wire communication being a separate count of this Indictment;

| Count | Date | Wire Transmission |
|-------|------|-------------------|
| 5 | 11/29/06 | Wire Transfer of $1,801,226.64 from Washington to Utah |
| 6 | 3/9/07 | Wire Transfer of $352,922 from Ohio to Utah |

all in violation of 18 U.S.C. §§ 1343, 1349 and § 2(b).

COUNT 7
(Money Laundering)

44.    On or about March 15, 2007, in the Central Division of the District of Utah and

elsewhere,

**PORTIA R. LOUDER,**

Defendant, and others, knowingly engaged in a monetary transaction and did aid, abet, counsel,

command, induce and procure and cause S.B. to engage in a monetary transaction in criminally

derived property of a value greater than $10,000 that was derived from the specified unlawful

activity of a False Statement to a Financial Institution as alleged in Count 4 and Wire Fraud in

Count 6, in that the Defendant caused $340,000 of the $350,000 loan proceeds from National

City Bank to be transferred from a bank account in the name of Havenwood Investments at Zions

First National Bank into a bank account in the name of Medallion Capital LLC at Zions First

National Bank; all in violation of 18 U.S.C. §1957 and §§2(a) and (b).

13

### 1747 SAGE HOLLOW

45.     In or about September, 2006, L.K. through Plateau Homes, offered a home for sale at 1747 East Sage Hollow Drive, Draper, Utah.

46.     On or about September 11, 2006, Dustin Wilcox, executed a Real Estate Purchase Contract offering to buy the Sage Hollow property for $1,070,000. An addendum to this contract increased the sale price to $1,095,000.

47.     When the sale closed, the sales price at closing was increased to $2,700,000. Despite that price, the seller received his profit as though the property sold for approximately $1,095,000.

48.     The settlement statement for the sale, which closed on or about April 6, 2007, reflects a payment of $600,000 made on behalf of the borrower, Dustin Wilcox, by Kentucky Money. Kentucky Money transferred $600,000 to the title company and then was repaid the money when a refinance loan was obtained from Washington Mutual, making the payment a phantom payment. Kentucky Money was setup by a friend of Dustin Wilcox, at Dustin Wilcox's suggestion. The $600,000 that Kentucky Money used to send to the title company was provided by Medallion Capital, a company controlled by the Defendant PORTIA R. LOUDER.

49.     The settlement statement also reflects that Waveland Ent., LLC, had a notice of interest in the amount of $1,540,000. The seller, L.K., did not know why this was listed on the settlement statement. The notice of interest was signed by the Defendant CHAD LOUDER as the Managing Member of Waveland Enterprises, LLC.

50.     The Kentucky Money and Waveland transactions were designed, in part, to justify the increase in the price of the Sage Hollow Property from $1,095,000 to $2,700,000.

### COUNTS 8 and 9
(Wire Fraud)

51.     The allegations of the Scheme and Artifice to Defraud and those related to 1747

Sage Hollow are incorporated by reference as though fully set forth herein in Counts 8 and 9.

52.     On or about the dates listed below, in the Central Division of the District of Utah,

**PORTIA R. LOUDER, and**
**CHAD LOUDER**

Defendants herein, and others, having devised and intended to devise the above described

scheme and artifice to defraud regarding financing relative to the property at 1747 Sage Hollow,

and for obtaining money and property by means of false and fraudulent pretenses,

representations, and promises, for the purpose of executing said scheme and artifice to defraud,

and attempting to do so, did cause to be transmitted by means of wire communication in

interstate commerce certain writings, signs and signals, each such use of wire communication

being a separate count of this Indictment;

| Count | Date | Wire Transmission |
|-------|------|-------------------|
| 8 | 4/09/07 | E-mail from "chlouder@yahoo.com" to Executive Title at 2:14 p.m. |
| 9 | 4/09/07 | E-mail from "chlouder@yahoo.com" to Executive Title at 3:46 p.m. |

each count in violation of 18 U.S.C. §§ 1343, 1349 and § 2(a).

COUNT 10
(Money Laundering)

53.     On or about April 10, 2007, in the Central Division of the District of Utah and

elsewhere,

## PORTIA R. LOUDER and
## CHAD LOUDER

Defendants, and others, knowingly engaged in a monetary transaction and did aid, abet, counsel,

command, induce and procure a monetary transaction in criminally derived property of a value

greater than $10,000 that was derived from the specified unlawful activity of a Wire Fraud as

alleged in Counts 8 and 9, in that the Defendants caused over $10,000 of the loan proceeds from

Merchant's Mortgage to be transferred to Waveland Enterprises and then to be transferred into a

bank account in the name of Epik Funding at Zions First National Bank; all in violation of 18

U.S.C. §§ 1957 and 2(a).

### 354 DEERFIELD

54.     In or about January, 2007, the Defendant PORTIA R. LOUDER negotiated the

purchase of a property at 354 N. Deerfield Drive, Alpine, Utah. The sales price negotiated with

the seller, P.M., was between $805,000 and $839,000.

55.     By the time of closing, the sales price had been raised to $950,000.

56.     The purchaser of the property at 354 Deerfield was K.W., Defendant PORTIA R.

LOUDER's mother.

57.     On or about March 26, 2007, the Defendant PORTIA R. LOUDER caused K.W. to sign a loan application for a $760,000 loan for 354 Deerfield. The loan application falsely stated that the K.W. earned $20,000 a month, that the property will be K.W.'s primary residence, and that K.W. had a balance of $439,000 in an account with Johnson and Associates.

COUNT 11<br>(Wire Fraud)

58.     The allegations of the Scheme and Artifice to Defraud and those related to 354 Deerfield are incorporated by this reference as though fully set forth herein.

60.     On or about the date listed below, in the Central Division of the District of Utah,

**PORTIA R. LOUDER,**

Defendant herein, having devised and intended to devise the above described scheme and artifice to defraud regarding financing for to the property at 354 Deerfield, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing said scheme and artifice to defraud and attempting to do so, did cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs and signals;

| Count | Date | Wire Transmission |
|---|---|---|
| 11 | 03/27/07 | Wire of Loan proceeds $765,382.53 from Texas to Utah. |

all in violation of 18 U.S.C. §§ 1343, 1349 and § 2(a).

891 HEALEY

61.     In 2007, M.A. built a home at 891 Healey Homestead, Alpine Utah, and offered it for sale by owner.

17

62.     R.D. acted as a finder of properties for the Defendant PORTIA R. LOUDER, who wanted properties that were for sale by owner, among other things. R.D. found the Healey property for the Defendant PORTIA R. LOUDER.

63.     Dustin Wilcox, offered to buy the Healey home for $900,000 but told M.A. he wanted documents to reflect a sales price of more than $1,000,000.

64.     On April 2, 2007, M.A.'s attorney sent an e-mail to Dustin Wilcox stating, among other things, that "this kind of dual documentation... raises the specter of mortgage fraud."

65.     Thereafter, on or about May 10, 2007, the Defendant PORTIA R. LOUDER signed a real estate purchase contract (REPC) on behalf of Medallion Capital, offering to buy the Healey property for $900,000.

66.     On or about June 18, 2007, the Defendant PORTIA R. LOUDER signed an addendum to the previous REPC stating that "Buyer to be Epik Funding, LLC."

67.     On or about June 18, 2007 a Settlement Statement was completed showing that Epik Funding bought the Healey property from M.A. for $900,000.

68.     On or about July 3, 2007, a REPC was prepared, in which the Defendant CHAD LOUDER offered to purchase the Healey property for $2,300,000. The seller on the REPC was Epic Funding, with Dustin Wilcox named as signing on behalf of Epic Funding.

69.     On or about August 10, 2007, a Settlement Statement was prepared showing CHAD LOUDER was buying the Healey property for $2,300,000 from Epik Funding.

70.     As a result of that sale, after the Defendant CHAD LOUDER obtained a $1,840,000 loan from Washington Mutual, Epik Funding received $1,456,396.69 from those loan proceeds. $1,456,369.69 was transferred from Epik Funding to Medallion Capital.

71.     On the loan application that the Defendant CHAD LOUDER submitted to

Washington Mutual on or about August 10, 2007, he represented that he intended that 891

Healey would be his permanent residence, even though he represented on August 13, 2007 to

National City Bank that 997 Pfeifferhorn would be his permanent residence. At that time, the

Defendant CHAD LOUDER was residing at 6021 Dry Creek Road, Highland, Utah.

COUNT 12
(False Statement)

72.     The allegations of the Scheme and Artifice to Defraud and those related to 891

South Healey Homestead Circle, Alpine Utah, are incorporated by this reference in Counts 12

and 13, as though fully set forth herein.

73.     On or about August 10, 2007 in the Central Division of the District of Utah and

elsewhere,

**PORTIA R. LOUDER**
and
**CHAD LOUDER**

Defendants, and others, did knowingly make the false statements listed below, and did aid, abet,

counsel, command, induce and procure said false statements, for the purpose of influencing the

action of Washington Mutual Bank, a bank the deposits of which were then insured by the

Federal Deposit Insurance Corporation, in connection with a loan application for $1,840,000 for

a mortgage on 891 South Healey Homestead Circle, Alpine Utah, in that the Defendants falsely

stated:

> a.     that the Defendant CHAD LOUDER's monthly base employment income
>         from Portia Inc./Photography by Portia was $43,000;
>
> b.     that the Defendant CHAD LOUDER's current address was 997 West
>         Pfeifferhorn Drive, Alpine, Utah; and

19

      c.     that the Defendant CHAD LOUDER intended to occupy the property as his primary residence.

when in truth and in fact, the Defendant did not reside at 997 West Pfeifferhorn Drive, the

monthly income for the Defendant CHAD LOUDER was far less, and the Defendant CHAD

LOUDER did not intend to occupy the property as his primary residence;

all in violation of 18 U.S.C. §§ 1014 and 2(a).

COUNT 13
(Money Laundering)

     74.     On or about August 14, 2007 in the Central Division of the District of Utah and

elsewhere,

**PORTIA R. LOUDER and
CHAD LOUDER**

Defendants, and others, knowingly engaged in a monetary transaction and did aid, abet, counsel,

command, induce and procure and cause a monetary transaction in criminally derived property of

a value greater than $10,000 that was derived from the specified unlawful activity of a False

Statement to a Financial Institution as alleged in Count 12, in that the Defendant caused over

$10,000 of the loan proceeds from Washington Mutual to be transferred from a bank account in

the name of Epik Funding at Zions First National Bank into a bank account in the name of

Medallion Capital LLC at Zions First National Bank; all in violation of 18 U.S.C. § 1957 and §§

2(a) and (b).

381 WAYNE

     75.     In or about late 2007, Defendant, PORTIA R. LOUDER, negotiated the sale of a

property at 381 East Wayne Court, Alpine Utah, with J.R., for a sales price of approximately

$725,000 or $730,000.

20

75.     An Option Contract for Sale and Purchase of the 381 Wayne property, dated November 30, 2007 was signed, supposedly between J.R. as option seller and "Epic" Loans as option buyer, with a purchase price of $705,000. J.R.'s signature on the document was forged. "Epic" Loans was represented by J.B.R., the Defendant PORTIA R. LOUDER's son. J.B.R.'s signature was forged on the Option Contract.

76.     When the sale closed, J.R. (the seller) learned for the first time that the buyer was K.W., the mother of the Defendant PORTIA R. LOUDER and Dustin Wilcox, and the mother-in-law of the Defendant CHAD LOUDER. Supposedly, on December 5, 2007, a REPC was created listing K.W. as the purchaser and J.R. as the seller. J.R.'s signature on the REPC was forged. The purchase price on the REPC was $1,585,000.

77.     On or about December 6, 2007, "chlouder@yahoo.com" sent First National Title an e-mail stating the purchase price for 381 Wayne was $1,585,000, with "Epik" Loans to receive $875,000, J.R. (seller) and Builder to receive $705,000.

78.     On or about November 26, 2007, CHAD LOUDER, using the email address of "waveland.chad@gmail.com" electronically submitted information to Active Finance Group (AFG) requesting a $1,100,000 loan for a purchase price of $1,600,000.

79.     AFG loaned $1,000,000 to fund the purchase. Supposedly, the loan was made on a loan to value ratio of 65%, when had the true purchase price been disclosed, the loan to value ratio would have been over 125%.

80.     The Defendant PORTIA R. LOUDER, through Medallion Capital, paid $632,658.14 as a down payment, but received $867,837.20, resulting in a profit to the Defendants of $230,179.06.

### COUNT 14 and 15
(Wire Fraud)

21

81.    The allegations of the Scheme and Artifice to Defraud and those related to 381 Wayne Court are incorporated by this reference as though fully set forth herein.

82.    On or about the dates listed below, in the Central Division of the District of Utah,

**PORTIA R. LOUDER**
and
**CHAD LOUDER**

Defendants, and others, herein, having devised and intended to devise the above described a scheme and artifice to defraud regarding financing relative to the property at 381 Wayne Court, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing said scheme and artifice to defraud, did cause to be transmitted by means of wire communication in interstate commerce certain writings, signs and signals, each such use of wire communication being a separate count of this Indictment; all in violation of 18 U.S.C. §§ 1343, 1349 and § 2(a).

| Count | Date | Wire Transmission |
|-------|------|-------------------|
| 14 | 11/26/07 | Electronic Submission from CHAD LOUDER to AFG |
| 15 | 12/10/07 | $1,000,000 from AFG - Colorado to Utah |

1814 SOMERSET RIDGE

83.    In 2007, T.D. and his wife owned a home at 1814 Somerset Ridge, Draper, Utah. The asking price for the home was $1,125,000.

84.     On December 14, 2007, the Defendant PORTIA R. LOUDER agreed to buy the home at 1814 Somerset Ridge for $1,115,000. Despite that, the Defendant PORTIA R. LOUDER created a REPC for the home with Epic Loans as the seller, on the first page, and JTR, LLC as the seller on the last page. The purported representative of the seller was J.B.R., the son of the Defendant PORTIA LOUDER. J.B.R. had no involvement in the transaction and knew nothing about it.

85.     The REPC described in the immediately preceding paragraph listed R.S. as the purchaser. The purchase price listed on the REPC was $2,480,000. R.S. executed documents for the purchase of the property at the behest of the Defendant PORTIA R. LOUDER. After the sale closed, R.S. did not know that the sale had gone through in her name until she was contacted by Active Finance Group (AFG), the lender, and asked why she was not making payments on the loan.

86.     On December 14, 2007, Active Finance Group loaned $1,495,000 for the purchase of the property, with R.S. as the buyer and JTR, LLC as the seller at a price of $2,480,000. AFG believed that the loan amount as compared with the value of the property (the loan to value ratio) was 65%, when in fact, AFG was loaning more than the original price of the property, $1,115,000, which would result in a loan to value ratio far in excess of 65%. AFG also did not know that the real purchaser was the Defendant PORTIA R. LOUDER. It further did not know that the purported down payment of $100,000 was false, and that the Defendant, PORTIA LOUDER, had provided, through Waveland Financing and other entities the Defendants controlled, almost $400,000 so the sale could go through.

87.     Epic Loans, another entity controlled by the Defendant, PORTIA R. LOUDER, received $1,261,632.50 from the transaction.

<u>COUNT 16</u>
(Wire Fraud)

88.    The allegations of the Scheme and Artifice to Defraud and those under the

heading 1814 Somerset Ridge are realleged and incorporated in this Count.

89.    On or about December 18, 2007, in the Central Division of the District of Utah,

**PORTIA R. LOUDER,**

Defendant herein, having devised and intended to devise the above-described scheme and artifice

to defraud regarding financing relative to the property at 1814 Somerset, and for obtaining

money and property by means of false and fraudulent pretenses, representations, and promises

and attempting to do so, for the purpose of executing said scheme and artifice to defraud, did

cause to be transmitted by means of wire communication in interstate commerce  certain

writings, signs and signals, that is, a wire transfer of $1,495,000 from Colorado to Utah;

all in violation of 18 U.S.C. §§ 1343, 1349 and § 2(b).

<u>COUNT 17</u>
(Conspiracy)

90.    The allegations of the Scheme and Artifice to Defraud and of Counts 1 through 16

of this Indictment are realleged and incorporated in this Count.

91.    From on or about early 2006, until on or about May, 2008, in the Central Division

of the District of Utah and elsewhere,

**PORTIA R. LOUDER, and
CHAD LOUDER**

Defendants, did knowingly conspire, combine, confederate and agree with others known and

unknown to commit one or more than one of the following offenses against the United States of

America:

24

    a.      False Statement to a Financial Institution in violation of 18 U.S.C. § 1014;

    b.      Wire Fraud in violation of 18 U.S.C. § 1343; and

    c.      Money Laundering in violation of 18 U.S.C. § 1957.

OVERT ACTS

In furtherance of the conspiracy and to effect the objects of the conspiracy, the Defendants

committed the following as Overt Acts: each of the acts in Counts 1 through 18 of this

Indictment; all in violation of 18 U.S.C. § 371.

NOTICE OF INTENTION TO SEEK CRIMINAL FORFEITURE

(18 U.S.C. Section 981(a)(1)(C); 28 U.S.C. Section 2461)

As a result of committing the felony offenses alleged in the Counts of this Indictment, each of

which is punishable by imprisonment for more than one year, defendants PORTIA R. LOUDER,

and CHAD LOUDER shall forfeit to the United States pursuant to 18 U.S.C. Section

981(a)(1)(C); 28 U.S.C. Section 2461 any and all property constituting or derived from any

proceeds said Defendants obtained directly or indirectly as a result of the said felony charges

alleged in the Counts listed in this Notice, and any property traceable thereto.

As to PORTIA R. LOUDER: The approximate aggregate sum of Three Million Nine Hundred

Thousand Dollars ($3,900,000) in United States currency received and diverted by PORTIA R.

LOUDER, in connection with the above-referenced offenses.

As to CHAD LOUDER: The approximate aggregate sum of Two Million Four Hundred and

Fifty Thousand Dollars ($2,450,000) in United States currency received and diverted by CHAD

LOUDER, in connection with the above-referenced offenses.

A TRUE BILL:

25

_/S/_____
FOREPERSON OF THE GRAND JURY

CARLIE CHRISTENSEN
Attorney for the United States, Acting Under Authority Conferred by 28 U.S.C. § 515

KARIN FOJTIK
Assistant United States Attorney

26